USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 9-207-19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x
MAXIM H. WALDBAUM,

                Plaintiff,

    -against-

LAUFER DELENA CADICINA JENSEN & BOYD,
LLC, MARIO DELMONACO, and MICHELLE
BENEDEK-BARONE,

                Defendants.
-------------------------------------------------------------- x

18-cv-4225 (ALC)

OPINION & ORDER

ANDREW L. CARTER, JR., District Judge:

## SYLLABUS

In 2001, Maxim H. Waldbaum, a lawyer, divorced his ex-wife. Pursuant to divorce proceedings, Mr. Waldbum was paying upwards of $20,000 a month to his ex-wife in alimony and child support. In 2011, economic factors, increasing age, and a decreasing number of clients led to Mr. Waldbaum's termination from a high salaried job at a New York law firm. Mr. Waldbaum was no longer able to satisfy his monthly payment obligations. Mr. Waldbaum's inability to pay led his ex-wife to hire Laufer, Delena, Cadicina, Jensen & Boyd (hereinafter, "Laufer"), a New Jersey law firm, to obtain the full monthly payment she was owed. Mr. Waldbaum, the Plaintiff in this action, is now suing Laufer and two lawyers at that firm (hereinafter, "Defendants").[1]

From 2008 on, Mr. Waldbaum (hereinafter, "Plaintiff" or "Mr. Waldbaum") experienced sporadic employment. Of note, Plaintiff worked for two law firms: Eaton and Van Winkle, PLLC (hereinafter, "Eaton") and Rimon, PC (hereinafter, "Rimon"). Despite his employment as

---

[1] Plaintiff names two individual lawyers representing his ex-wife, Mario Delmonaco ("Mr. Delmonaco") and Michelle Benedek-Barone ("Ms. Benedek-Barone"), as Defendants in this action.

COPIES MAILED

a lawyer, Plaintiff still asserted he could not pay the monthly amount of support owed to his ex-wife. Shortly thereafter, the monthly amount was lowered.

In response to Plaintiff's constant representations of his inability to pay, Laufer, via the services of Ms. Benedek-Barone and Mr. Delmonaco, continued to aggressively seek full payment by securing court orders, seeking to garnish his wages, and trying to incarcerate Plaintiff for his continuous failure to pay. More specifically, Defendants obtained a withholding order, garnishing Plaintiff's wages directly from his then-employer, Eaton. The amount sought from Eaton exceeded what Eaton paid Plaintiff monthly. Defendants also attempted to garnish wages directly from Mr. Waldbaum's subsequent employer, Rimon. Plaintiff claims that by harassing him with aggressive tactics, including baseless litigation, Defendants interfered with his law practice and career prospects. Plaintiff further asserts Defendants harassed his employers by way of baseless accusations of conspiracy.

In this action based on diversity of citizenship jurisdiction, Plaintiff asserts two causes of action: tortious interference with contractual relationships and tortious interference with business relationships. Plaintiff also seeks declaratory relief under 28 U.S.C. §§ 2201-2202.[2]

For the following reasons, Plaintiff's Complaint is dismissed in its entirety. The Defendants' Motion to Dismiss is granted.

## PROCEDURAL HISTORY

Mr. Waldbaum initiated this action on May 11, 2018, and he filed a Complaint on May 15, 2018. ECF Nos. 1, 5. Plaintiff first amended his Complaint on July 25, 2018. ECF No. 10 ("FAC"). Mr. Waldbaum amended the Complaint for a second time on July 27, 2018. ECF No. 19 ("SAC"). Following the filing of the SAC, the Parties submitted a series of Letters pertaining

---

[2] Although the Third Count in Plaintiff's Complaint is a claim for Declaratory relief under 28 U.S.C. §§ 2201-2202, Plaintiff fails to specify the nature of the declaratory relief sought. *See* TAC ¶¶ 58-64.

2

to Defendants' August 23, 2018 request for a pre-motion conference. ECF Nos. 27-32. On October 24, 2018, the Court held a Status Conference to address the Letters and multiple additional filings. ECF Nos. 33-39. Pursuant to an Order from the Court, the Parties submitted a Joint Status Report on November 7, 2018, updating the Court on settlement discussions as well as informing the Court that Defendants wished to move forward with a motion to dismiss. ECF Nos. 39-40. Pursuant to the briefing schedule proposed by the Parties, Plaintiff filed his Third Amended Complaint ("TAC") on November 14, 2018.[3] ECF Nos. 42, 44. Defendants filed their Motion to Dismiss on November 30, 2018. ECF No. 45. Plaintiff filed an Opposition on December 14, 2018. ECF No. 46. Defendants replied on December 21, 2018. ECF No. 47.

Defendants' Motion is deemed fully briefed. After careful consideration, Defendants' Motion to Dismiss is hereby **GRANTED**.

## BACKGROUND[4]

Mr. Waldbaum is an attorney who has spent much of his career living and practicing law in New York. ECF No. 44, ¶ 8 ("TAC"). In 2001, Plaintiff divorced his ex-spouse. *Id.* ¶ 9. Pursuant to divorce proceedings, Mr. Waldbaum paid his ex-spouse roughly two million dollars in alimony and child support over a span of eight years. *Id.* ¶ 10. Mr. Waldbaum claims that, at various points following the divorce, he and his ex-spouse agreed to reduce the support payments owed in light of the 2008 financial crisis and the impact it had on Mr. Waldbaum's employment. *Id.* ¶¶ 10-11. In 2010, Plaintiff's ex-spouse, via Defendants, initiated a proceeding in matrimonial court in New Jersey seeking the full amount Plaintiff owed in support prior to the

---

[3] Due to multiple deficient docket entries, the Parties Motions were subsequently refiled on January 7-9, 2018, respectively. ECF Nos. 48-51.
[4] When determining whether to dismiss a case, the court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). Pursuant to that standard, this recitation of facts is based on Plaintiff's Third Amended Complaint and accompanying submissions. *See* ECF No. 44.

financial crisis – around $20,000 per month – despite the previously negotiated reduction agreements *Id.* ¶ 11.

In 2012, as the matrimonial battles wore on, Mr. Waldbaum secured employment with New York based law firm Eaton & Van Winkle PLLC ("Eaton"). *Id.* ¶ 12. Mr. Waldbaum and Eaton executed an employment agreement (hereinafter, the "Employment Agreement") outlining the nature of his role with Eaton and his compensation structure. *Id.* ¶¶ 12-13.; TAC Ex 1 ("Emp't Contract"). According to the Complaint, the Employment Contract required Eaton to provide "certain support to Plaintiff and Plaintiff to receive compensation for (1) work he performed for the firm; (2) work the firm gave him to perform for others, particularly other partners, in the firm; (3) work other partners and other employees of the firm did for Plaintiff; (4) other benefits that provided to all employees (sic)." *Id.* ¶ 13. Plaintiff contends that his employment "heavily" relied on the support from the firm and his relationship with his colleagues. *Id.* ¶ 15. Mr. Waldbaum's newfound employment with Eaton represented his sole source of income, and he possessed no other assets or supplemental forms of income. *Id.* ¶¶ 15-17.

In 2015, prior to a previously scheduled plenary hearing in New Jersey family court, Plaintiff alleges that Defendants requested $25,000 in fees for litigation costs and expenses. *Id.* ¶ 18. Plaintiff was unable to pay the requested fees, and the court entered a Default Order against Plaintiff on October 22, 2015. *Id.* Defendants were awarded over $150,000 in fees and placed a lien on Plaintiff's current spouse's properties located in New York. *Id.* At some point thereafter, Defendants involved the Probation Department of the Superior Court of New Jersey ("Probation") to oversee the case. *Id.* ¶ 19. On December 1, 2015, Probation issued Eaton a Notice of Income Withholding Order ("IWO") pursuant to the Uniform Interstate Family

Support Act ("UIFSA"). *Id.* ¶ 20. The IWO garnished $8,250 a month from Plaintiff's monthly income. *Id.* Plaintiff alleges that prior to receiving the IWO, Eaton informed him that his monthly income would be $7,000. *Id.* ¶ 21. Upon realizing that the IWO would be impossible to comply with, Eaton advised Probation of the issue. *Id.* ¶ 22.

Following the issuance of the IWO, Defendants returned to court in New Jersey seeking a bench warrant with a release fee of $100,000. *Id.* ¶ 23. However, due to Plaintiff's inability to pay, the court vacated the bench warrant. *Id.* Mr. Waldbaum supplements his claims by asserting that Defendants knew that Probation and the New Jersey court were engaged in conflicting proceedings, yet they failed to inform the two agencies of the inconsistent actions taken by the other. *Id.* Furthermore, even though the IWO was also issued to the Social Security Administration ("SSA") and the Internal Revenue Service ("IRS"), Mr. Waldbaum claims that Defendants specifically contacted and "sued" Eaton, Plaintiff's employer at the time. *Id.* ¶¶ 25-27. Plaintiff posits that, despite knowing that their client (Plaintiff's ex-spouse) was being adequately provided for via the IWO, Defendants continued to "harass" Mr. Waldbaum with subpoenas, court hearings, TROs, threats of sanctions, and allegations of a conspiracy theory between Eaton and Plaintiff relating to Plaintiff's assets. *Id.* ¶ 30. Plaintiff declares that all of the harassment occurred on the basis of withheld information from the Court – that Plaintiff was adequately complying with the IWO and providing his ex-spouse with spousal support. *Id.* As a result of Defendants' conduct, Plaintiff alleges that his relationship with Eaton soured and eventually ceased to exist. *Id.* ¶¶ 30-31.

In October of 2017, Eaton engaged in merger discussions with Offit Kurman ("Offit"), a Maryland-based law firm seeking to establish a New York presence. *Id.* ¶ 32. Initially, upon learning that Eaton was prepared to go forward with the merger without Plaintiff, Offit hesitated

5

and withdrew their offer. *Id.* However, on December 17, 2017, Plaintiff was made aware that the merger would continue and Plaintiff would be the only partner who would not be offered a position as a member of Offit, New York. *Id.* ¶ 33. Mr. Waldbaum claims that Defendants' constant harassment damaged Plaintiff's relationship with Eaton to the point that "open hostility existed between members of the Executive Committee [at Eaton] and Plaintiff." *Id.* Further, Mr. Waldbaum asserts that it was Defendants' conduct that ultimately led to his termination on December 17, 2017. *Id.* ¶ 34.

Following his termination, Plaintiff states that he lived off only $200 a month as he sought out new employment. *Id.* Aside from providing Plaintiff with a stream of income, Mr. Waldbaum declares that newfound employment would allow him to satisfy his only remaining support obligation – opposing counsels' fees. *Id.* ¶ 35. On May 1, 2018, Plaintiff secured employment with the virtual law firm Rimon, PC ("Rimon"). *Id.* ¶ 38. Shortly thereafter, Defendant Delmonaco sent a letter to New Jersey Court requesting that the Judge incarcerate Plaintiff. *Id.* ¶ 39. Following Defendant Delmonaco's initial correspondence with the Court, a subsequent letter was sent indicating that Probation would be notified of his new employment and ability to pay the outstanding $50,000 arrest warrant. *Id.* ¶ 40. These actions, Plaintiff claims, are an intentional effort on the part of Defendants to destroy his new employment relationship with Rimon. *Id.* ¶ 41.

In sum, Mr. Waldbaum alleges that Defendants abusive and unrelenting practices destroyed his business relationships with Eaton and Offit, continue to threaten his employment with Rimon, and made "Plaintiff and [his ex-spouse] financially destitute." *Id.* ¶¶ 33-34, 36, 41. Plaintiff claims that Defendants still seek their attorneys' fees and have turned to Plaintiff's current spouse's assets. *Id.* ¶ 37.

## STANDARD OF REVIEW

When considering a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* at 663.

## DISCUSSION

### I. Plaintiff has Failed to State a Claim for Tortious Interference with a Contract

Plaintiff's claim for tortious interference with a contract is governed by New York Law. *RSM Production Corp. v. Fridman*, 643 F.Supp.2d 382, 405 (S.D.N.Y. 2009) (citing *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401-02 (2d Cir. 2006)). To prevail, a plaintiff must allege five things: (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of contract without justification; (4) actual breach of the contract; and (5)

7

damages. *Id.* Moreover, "the plaintiff must assert, with respect to each defendant, that the defendant's actions were the "but for" cause of the alleged breach." *Id.* To demonstrate "but for" causation, a plaintiff must show that any breach would not have occurred but for the activities of the defendant. *Id.*; *see Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 828 (2d Cir. 1990) (citing *Special Event Entm't v. Rockefeller Ctr., Inc.*, 548 F.Supp. 72, 78 (S.D.N.Y. 1978)). A failure by a plaintiff to properly allege any individual element of a tortious interference with a contract claim warrants dismissal of the claim. *RSM Production Corp.*, 643 F.Supp.2d at 405.

Here, Plaintiff's Complaint fails to establish facts sufficient to support the essential elements of a tortious interference claim.[5]

### a. Plaintiff has Failed to Demonstrate a Breach of Contract

In order to succeed on a tortious interference with a contract claim, Mr. Waldbaum must specifically allege that Eaton breached its contract with him. *Cerveceria Modelo, S.A. De C.V. v. USPA Accessories LLC*, 2008 WL 1710910, *3 (S.D.N.Y. April 10, 2008) (collecting cases); *see Bruce Bzura, LLC v. Moss*, 2018 WL 7858772, *5 (S.D.N.Y. Oct. 25, 2018) (collecting cases). While Plaintiff states that Defendants "procured multiple breaches" of his contract with Eaton, the "multiple breaches" that Plaintiff refers to are not indicated as obligations owed by Eaton to Plaintiff in the Employment Contract provided to the Court by Plaintiff. Emp't Contract. Nowhere in the Employment Contract does it state that Eaton was required to allow Plaintiff to be a "major player" in the marketing committee.[6] TAC ¶ 30; *see* Emp't Contract. Nor does it require Eaton to "engage[] Plaintiff to work on EVW matter." *Id.* Or "discuss[] any potential

---

[5] Plaintiff's claim for tortious interference with a contract can only be liberally construed to apply to his employment with Eaton. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Plaintiff does not allege a contract between him and Offit, and there is no evidence of a breach of any contract Plaintiff had with Rimon. *See RSM Production Corp.*, 643F.Supp.2d 382; Emp't Contract.

[6] The only reference to marketing in the Employment Contract indicated that Plaintiff would receive a marketing budget. Emp't Contract ¶ 8. At no point in the Third Amended Complaint does Plaintiff allege that he did not receive a marketing budget. *See* Emp't Contract.

8

work or cases/litigation with Plaintiff." *Id.* Or be "invited ... to be a part of any meetings with clients and potential clients." *Id.* Moreover, the Employment Contract does not require Eaton to cease from developing animosity towards Plaintiff. *Id.* While the Employment Contract indicates that Plaintiff would be "invited to attend and ... encouraged to participate in" meetings amongst Eaton partners, it also states that Plaintiff would not have a vote at such meetings. Emp't Contract ¶ 2. What's more, there is no requirement on the part of Eaton to include Plaintiff in strategy meetings with clients. *See id.* While Plaintiff also alleges, in a conclusory fashion, that Eaton "breached its fiduciary duty to withhold Plaintiff's employee's benefit in fear of Defendants' threat to sue," Plaintiff provides no further explanation, factual details, or documentation supporting his claim. TAC ¶ 7. Finally, nowhere in the Employment Contract does it state that Eaton and its partners are required to refer or consult with Plaintiff about anything. *Id.* ¶ 30; *see* Emp't Contract.

Plaintiff's specifically enumerated alleged breaches, even if taken as true, are not violations of the specific Employment Contract on which Plaintiff bases his TAC. Thus, Plaintiff has not alleged a breach of contract and has failed to satisfy an element of a tortious interference with a contract claim. *See RSM Production Corp.*, 643 F.Supp.2d at 405.

### b. Plaintiff has Failed to Allege Facts Sufficient to Demonstrate that Defendants were the "But For" Cause of Any Alleged Breach

Even if the Court were to find that Plaintiff alleged facts sufficient to give rise to the plausible inference that Eaton breached the Employment Contract, there is no indication that Eaton would not have terminated Plaintiff's employment prior to the merger. In other words, Plaintiff does not allege that Defendants' conduct is the "but-for" cause of any alleged breach. *See Sharma*, 916 F.2d at 828. Plaintiff makes offhand comments about his stature as an attorney – "one of the best attorneys at [Eaton]" – but provides no evidence that Eaton was obligated or

9

inclined to retain him as a non-equity partner following the merger. TAC ¶¶ 6, 33. Rather, the Employment Contract provided by Plaintiff specifically states that "there is no assurance that [Plaintiff] will be allowed to continue in such a relationship if you do not transition to equity partner." Emp't Contract ¶ 13. Thus, the Employment Contract itself indicates that Plaintiff's status as a non-equity partner was not set in stone. *Id.* Plaintiff provides no factual allegations that refute this, nor has Plaintiff provided the Court or based his claims around any other contract that more thoroughly outlines the scope of his employment past 2012. Without more, Plaintiff cannot plausibly claim that his termination prior to the merger would not have occurred in the absence of Defendants' conduct. *See Farber*, 648 F.3d at 104.

Plaintiff has not demonstrated that his termination would not have occurred "but-for" Defendants seeking ways to ensure continued support payments and the satisfaction of outstanding counsels' fees. Thus, he has not alleged facts sufficient to support his claim, even if the Court were to determine that the Eaton breached the Employment Contract.

### II. Plaintiff has Failed to State a Claim for Tortious Interference with a Prospective Business Relationship

Aside from alleging tortious interference with a contract, Plaintiff also claims that Defendants interfered with a prospective business relationship – another tort governed by the laws of New York. *RSM Production Corp.*, 643 F.Supp.2d at 410-11. In a similar fashion, to successfully plead a claim for tortious interference with a prospective business relationship, a Plaintiff must allege the following: (1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship. *Id.* (citing *Kirch*, 449 F.3d at 400); *see Carvel Corp. v. Noonan*, 350 F.3d 6, 17 (2d Cir. 2003). An important difference between a claim for

tortious interference with a business relationship and tortious interference with a contract is that a claim for tortious interference with a business relationship "requires that the tortfeasor acted solely out of malice or used wrongful means," whereas a claim for tortious interference with a contract requires only "improper conduct." *Cervecaria Modelo*, 2008 WL 1710910, *4.

It is unclear from Plaintiff's TAC to which entities Mr. Waldbaum's claim for tortious interference with a prospective business relationship applies. *See* TAC. The TAC only makes mention of Eaton. *Id*. However, in an abundance of caution, the Court will also address Plaintiff's claim for tortious interference with a prospective business relationship as it relates to Offit and Rimon.

### a. Plaintiff has Failed to Allege a Business Relationship with Offit

As stated, the first element of a tortious interference with a prospective business relationship claim is that Plaintiff must demonstrate that it had a business relationship with a third party. *RSM Production Corp.*, 643 F.Supp.2d at 410-11. Here, there is no indication that Mr. Waldbaum had a business relationship with Offit. There is no contract indicating employment, nor was there any indication in Plaintiff's Employment contract with Eaton that he necessarily had a business relationship with a third-party should Eaton decide to merge. *See* Emp't Contract. Plaintiff cannot exclusively rely on conclusory allegation of a business relationship to support his claim for intentional interference with his potential relationship with Offit. *See Iqbal*, 556 U.S. at 663. Thus, Plaintiff has failed to allege sufficient facts to support a claim against Defendants as it pertains to Offit.

### b. Plaintiff has Failed to Allege Intentional Interference with the Business Relationship Between Rimon and Mr. Waldbaum

The second element of a claim for tortious interference with a prospective business relationship that a plaintiff must allege is that Defendants knew of a business relationship with a

third party and intentionally interfered with it. *RSM Production Corp.*, 643 F.Supp.2d at 410-11. In an effort to support his claim, Plaintiff relies on two letters sent to the New Jersey court by Defendant Delmonaco. *See* TAC Exs 4-5. First, Plaintiff cites to a letter dated May 7, 2018, sent to the New Jersey court upon Defendant Delmonaco's realization that Plaintiff had obtained employment with Rimon. *Id.* Ex 4. Plaintiff takes great liberty in summarizing the sentiment of Defendant Delmonaco's first letter. TAC ¶ 39. While Plaintiff claims that the letter states that Defendant Delmonaco "would do everything he can to make sure that Plaintiff would be punished for the counsel fees" they allegedly owed him, Defendant Delmonaco actually said, in the letter, that he would "take all steps necessary to ensure that [Plaintiff's ex-spouse] does not become another casualty of the Court system." *Id.*; TAC Ex 4. The May 7, 2018 letter contains no indication of Defendants' intention to interfere with the third-party relationship. *See id.*

Plaintiff also cites to a subsequent letter sent to the New Jersey court two days later, on May 9, 2018. *Id.* ¶ 40; TAC Ex 5. Once again, Plaintiff misconstrues the language of the letter. *Id.* ¶ 40. Plaintiff summarizes the sentiment of the letter by alleging that it indicated a promise to "destroy Plaintiff's practice and the relationship between Plaintiff and Rimon by the same tactics that defendants have been using on" Eaton. *Id.* In actuality, the May 9, 2018 letter reads as follows:

> "Mr. Waldbaum can be assured that a notice will be sent to Essex County Probation advising as to Mr. Waldbaum's current employment with Rimon's Intellectual Property Team. In order to ensure that the appropriate amount of support is garnished from Mr. Waldbaum's income, I will append a copy of Judge Casale's October 2016 decision to same."

TAC Ex 5.

The language in the two letters cited does not indicate an intention to interfere with Mr. Waldbaum's business relationship with Rimon. *Id.* Exs 4-5. The liberty taken by Plaintiff in

interpreting the letters sent by Defendants to the presiding Judge is not, in and of itself, sufficient to support Plaintiff's claim of intentional interference with his prospective relationship with Rimon.

### c. Plaintiff has Failed to Allege that Defendants Acted Solely out of Malice in any Alleged Interference with Eaton

The third element of a tortious interference with a prospective business relationship claim requires a plaintiff to demonstrate that a defendant acted solely out of malice, or used dishonest, unfair, or improper means. *RSM Production Corp.*, 643 F.Supp.2d at 410-11. Generally speaking, in order for a plaintiff to satisfy the third element, "the defendant's conduct must amount to a crime or an independent tort." *Valley Lane Industries Co., v. Victoria's Secret Direct Bran Management, L.L.C.*, 455 Fed.Appx 102, 105-06 (2d Cir. 2012); *see PKG Group, LLC v. Gamma Croma, S.p.A.*, 446 F.Supp.2d 249, 251 (S.D.N.Y. 2006) ("In all but the most egregious circumstances, dishonest, unfair, or improper means must amount to misconduct that constitutes either a crime or an independent tort."). Lawful conduct is generally insufficient to give rise to the required level of culpability as it pertains to a defendant. *Id.* at 106. Yet, an exception to this general rule exists if a plaintiff "can demonstrate that the defendant engaged in conduct for the sole purpose of inflicting intentional harm on plaintiffs." *Id.*; *see Schultz v. North American Ins. Group*, 34 F.Supp.2d 866, 869 (W.D.N.Y. 1999). Regarding the exception, "an action taken in economic self-interest is not an action taken for the sole purpose of inflicting intentional harm" on a plaintiff. *RSM Production Corp.*, 643 F.Supp.2d at 412; *see Catskill Development, L.L.C. v. Park Place Entertainment Corp.*, 217 F.Supp.2d 423, 434-35 (S.D.N.Y. 2002).

Here, even if Plaintiff satisfied all other elements of a tortious interference with a prospective business relationship, Plaintiff does not sufficiently allege that Defendants engaged

13

in unlawful conduct. *See* TAC. To summarize, Mr. Waldbaum alleges that he divorced his ex-spouse in 2001. *Id.* ¶ 9. Pursuant to the divorce, Mr. Waldbaum paid spousal and child support for eight years. *Id.* ¶ 10. Following the economic downturn in 2008, the monthly payments were reduced to an amount that Mr. Waldbaum could afford due to his lack of employment. *Id.* Two years later, in 2010, Plaintiff's ex-spouse initiated a proceeding in the matrimonial court in New Jersey demanding the original monthly amount of support payment – a proceeding initiated via Defendants' services. *Id.* ¶ 11. In 2012, Plaintiff secured employment with Eaton. *Id.* ¶ 12. In 2015, prior to a plenary hearing before the New Jersey court, Defendants sought attorneys' fees from Plaintiff. *Id.* ¶ 18. Plaintiff could not pay the fees and a Default Order was issued against Plaintiff. *Id.* Defendants then turned the Default Order over to Probation for the purposes of enforcement. *Id.* at 19. Shortly thereafter, Probation issued an IWO calling for a monthly garnishment of Plaintiff's wages. *Id.* ¶ 20. The IWO was later adjusted because of Plaintiff's inability to pay. *Id* ¶ 21. Defendants also sought relief from the New Jersey court by way of a bench warrant for the outstanding fees. *Id.* However, that bench warrant was vacated due to Plaintiff's inability to pay. *Id.* at 23. Defendants also sought relief by seeking sanctions against Eaton alleging that Eaton was involved in a conspiracy with Mr. Waldbaum to hide his assets. *Id.* ¶ 24. Defendants' sought-after sanctions were denied for lack of evidence. *Id.* ¶ 28. Additionally, Defendants sent multiple letters to the New Jersey court indicating Mr. Waldbaum's changes in employment and seeking to renew their multiple requests for attorney's fees. *Id.* ¶¶ 39-40.

None of the facts alleged are illegal or "improper." *RSM Production Corp.*, 643 F.Supp.2d at 410-11. Since 2012, Defendants have represented Plaintiff's ex-spouse in the ongoing matrimonial dispute in New Jersey. *See* TAC. Defendants continue to seek spousal and child support payments from Plaintiff, who continues to work as a lawyer. *Id.* In addition,

Defendants seek compensation for their services, pursuant to a Default Order issued in 2015. *Id.* Throughout, Defendants have utilized the court system in an effort to recover their fees and the money sought by their client. *Id.* Defendants' representation of their client and pursuit of their own business interests, as demonstrated by Plaintiff's TAC, are indications that any interference with Plaintiff's business relations was not undertaken for the sole purpose of inflicting intentional harm on Mr. Waldbaum. *RSM Production Corp.*, 643 F.Supp.2d at 412. Thus, Plaintiff has failed to satisfy the elements of a claim for tortious interference with a prospective business relationship as it pertains to Eaton.

### III. Plaintiff has Failed to State a Claim for Declaratory Relief

As stated, Plaintiff's TAC includes a third count for declaratory relief under 28 U.S.C. §§ 2201-2202. TAC ¶¶ 58-64. 28 U.S.C. § 2201, also known as the Declaratory Judgment Act, provides that "in a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration ..." *See Lifeguard Licensing Corp. v. Kozak*, 371 F.Supp.3d 114, 123 (S.D.N.Y. 2019) (citing 28 U.S.C. § 2201(a)). Courts have "a unique and substantial discretion in deciding whether to declare the rights of litigants." *Carr v. DeVos*, 369 F.Supp.3d 554, 563 (S.D.N.Y. 2019) (quoting *Winton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)). The Declaratory Judgment Act does not create an independent cause of action, and declaratory judgment actions are "governed by the Federal Rules of Civil Procedure like any other civil action." *Garanti Finansal Kiralama A.S. v. Aqua Marine and Trading Inc.*, 697 F.3d 59, 63 (2d Cir. 2012); *see Chevron Corp. v. Naranjo*, 667 F.3d 232, 244-45 (2d Cir. 2012)).

Here, Plaintiff has failed to allege facts that justify the relief sought. While Plaintiff cites the two letters sent by Defendant Delmonaco to the New Jersey court as proof that such relief is

15

necessary, as previously articulated by the Court, Defendant Delmonaco's letters do not rise to the level of threats void of justification and worthy of this Court's intervention. *See* TAC ¶¶ 59-61. As such, Plaintiff has failed to state a claim under 28 U.S.C. §§ 2201-2202, and his request for declaratory relief is denied.

## CONCLUSION

For the aforementioned reasons, Plaintiff has failed to allege facts sufficient to support a claim for tortious interference with a contract and tortious interference with prospective business relationship. Thus, Defendants' Motion to Dismiss is hereby **GRANTED**.

Accordingly, Plaintiff's requests for relief, including monetary, injunctive, and declaratory relief, are hereby **DENIED**.

**SO ORDERED.**

Dated: September 26, 2019
New York, New York

_____
ANDREW L. CARTER, JR.
**United States District Judge**